USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

MARCO TULIO SUAZO NUNEZ,

                      Defendant

20 MAG 1734

**ORDER**

**KATHARINE H. PARKER, Magistrate Judge:**

      Defendant Marco Tulio Suazo Nunez was arrested on March 3, 2020 and charged with illegal reentry in violation of 8 U.S.C. §§ 1326(a) & (b)(2).  He was not initially targeted for arrest on this basis.  Rather, federal law enforcement was looking for Mr. Suazo Nunez's brother.  On January 29, 2020, federal law enforcement officers conducted a search of Mr. Suazo Nunez's home where they thought they could find his brother.  His brother was not there.  Mr. Suazo Nunez voluntarily provided the officers with his identification information and stated that he lived at the apartment.  After searching applicable databases, the officers learned that Mr. Suazo Nunez had been deported in 2013 after having pleaded guilty to a felony.  Accordingly, Mr. Suazo Nunez was subsequently arrested for unlawfully returning to this county.

      Upon being arrested, Mr. Nunez consented to detention without prejudice to a future bail application, and he was placed at the Metropolitan Correctional Center ("MCC") in downtown Manhattan.  While detained at MCC, he claims he was assaulted by a guard, and, indeed, he was taken from MCC to New York Presbyterian Hospital for x-ray exams and treatment after the incident.  Because of lack of sufficient medical attention at MCC, he has

required two different medical treatment orders from the Court to address various medical conditions stemming from a serious work-related accident that caused damage to his back, knees, ankles and wrists. Mr. Suazo Nunez also has asthma. Most recently, he has been diagnosed with bacterial pneumonia, contracted while at the MCC. Although his asthma had been largely controlled prior to his arrest, his respiratory issues have intensified since being detained within the MCC, particularly with the pneumonia. Due to the current lockdown and quarantine rules in place at the MCC, he has had minimal contact with his counsel. In fact, his counsel had to apply for an order granting him a call with legal counsel (which the Court granted on April 9, 2020).

On April 15, 2020, Mr. Suazo Nunez submitted a letter asking the Court to temporarily release him on bail pursuant to 18 U.S.C. § 3142(i) due to the unprecedented health crisis caused by COVID-19, the substandard conditions at the MCC that place him at risk of contracting COVID-19 while detained, and his particular medical conditions that place him at high risk for serious complications and death from COVID-19. This Court held a telephonic hearing on April 17, 2020 and granted the application for temporary release. This call was open to the press and public. Mr. Nunez's counsel waived her client's right to be present for the hearing. Mr. Suazo Nunez's oldest daughter and wife were present for the hearing, and his daughter provided information to this Court during the hearing. This Order memorializes and supplements the Court's decision set forth on the record.

**BACKGROUND**

Mr. Nunez, age 49, is a citizen of Honduras. (Compl. ¶ 3(a).) He is married and has five children with his wife. His oldest daughter is a medical technician and lives in her own home, with her daughter, in Newburgh, New York. Mr. Nunez lives with his wife, a home healthcare

aide, and his other four children in a three-bedroom apartment in the Bronx, a home the family has had for approximately 15 years.  Mr. Nunez worked in construction for many years.  In March 2014, he fell from a ladder while at work and suffered serious injuries.  Since then, he has undergone seven surgeries to repair damage to his back, knees, ankles, and wrist.  He has screws in his back and suffers from chronic pain.  His most recent surgery was in February 2020 and, at the time of his arrest, he was still recovering and doing physical therapy to help alleviate continued pain and spasms in his back. He has been prescribed over thirteen different medications to address his various medical issues.[1]  He wears a cervical collar, as needed, and walks with a cane.  His counsel has provided medical records documenting his conditions, surgery, and prescriptions.  Mr. Suazo Nunez states that he was diagnosed with asthma in Honduras and used an inhaler in the past, but that since he has been sedentary due to his physical limitations, he has not needed medication for his asthma.  The medical records submitted to the Court do not reflect the asthma diagnosis, but the Court accepts Defendant's representation.  He reports that since being detained and catching pneumonia in the MCC, his breathing problems have worsened.

      Mr. Nunez was removed from the United States in May 2013 after having pleaded guilty to Assault in the Second Degree, in violation of New York Penal Law Section 120.05(1).  The assault took place in 2009.  Mr. Nunez pleaded guilty in July 2011 and was sentenced to a term of imprisonment of four years.  Upon being released from prison, he was immediately taken into the custody of United States Immigration and Customs Enforcement ("ICE") and returned to

---

[1] These medications include Voltaren 1% Gel, Polyethylene Glycol, Mederma Gel, Protonix, Percocet, Colace, Lyrica, Tizanidine, Naproxen, and Terocin.  Use of NSAIDS such as Naproxen may depress a person's immune system—something the Federal Food & Drug Administration ("FDA") is currently investigating.  *See* FDA.GOV (last visited Apr. 18, 2020).

Honduras. He returned to this country, without authorization, soon after being removed, and resumed living with his family at their apartment in the Bronx and doing construction work. He has not had any contact with the criminal justice system since returning to the United States.

Mr. Suazo Nunez is currently subject to an ICE detainer. Since the COVID-19 pandemic was declared, ICE has taken various steps to minimize spread of the virus. Among other things, it has released detainees at a higher risk of suffering serious complications from COVID-19 and is also limiting the intake of new detainees. *See ICE Guidance on COVID-19*, ICE.GOV, https://www.ice.gov/coronavirus (last visited Apr. 18, 2020). The decisions regarding detention are made on a case-by-case basis to protect the health of the individual, ICE staff, and staff and inmates at ICE detention facilities. *See id.*

## LEGAL STANDARD

Under the Bail Reform Act, the Court is required to release a pre-trial defendant unless it finds that no condition or combination of conditions will reasonably assure the appearance of the defendant in court as required and the safety of any other person and the community. 18 U.S.C. § 3142(e)(1). The government bears the ultimate burden of demonstrating by a preponderance of the evidence that there are no conditions or combination of conditions that will ensure the defendant's return to court or by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community. *See United States v. Salerno*, 481 U.S. 739 (1987); *United States v. Boustani*, 932 F.3d 79, 81 (2d Cir. 2019); *United States. v. Sabhnani*, 493 F.3d 63, 74-75 (2d Cir. 2007). In making a bail determination, the court makes an individualized assessment based on specific factors set forth in 18 U.S.C. Section 3142(g). These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the

nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Courts in this District have released defendants charged with unlawful reentry after evaluating these factors. *See, e.g.*, *United States v. Galitsa*, 17 CR 00324 (VEC), 2016 WL 11658186 (S.D.N.Y. July 28, 2016) (releasing defendant on conditions pending trial for unlawful reentry).

Under 18 U.S.C. Section 3142(i), the Court has the legal authority to grant relief from an order of detention entered under 18 U.S.C. Section 3142(e). Section 3142(i) permits the temporary pretrial release of a defendant otherwise requiring detention into the custody of a U.S. marshal or other "appropriate" person where "the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). A serious medical condition has been found to be a compelling reason warranting temporary release under this provision, and some courts have found that the recent COVID-19 pandemic and risks it presents to certain detained defendants with underlying health conditions warranted temporary release. *See, e.g.*, *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application of 65-year-old defendant with COPD, pursuant to 18 U.S.C. Section 3142(i), in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"); *United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (defendant facing terminal illness released to hospital for life-prolonging treatment that could not be provided in prison), *supplemented* (Mar. 5, 1993). The defendant has the burden of showing that temporary release is necessary under Section 3142(i). *See United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

**DISCUSSION**

To start, the Court finds that there are conditions of release that can be imposed that will reasonably assure Mr. Suazo Nunez's appearance in court as required and the safety of any other person and the community.  Mr. Suazo Nunez is charged with unlawful reentry—not a crime of violence.  Thus, the nature of the charge itself does not present a risk of danger to others or the community, as the government conceded during the hearing before this Court on April 17, 2020. The charged crime does present a flight risk, insofar as Mr. Suazo Nunez may seek to flee to avoid a potential prison sentence for this charge and eventual deportation back to Honduras.  In this case, the government has already offered Mr. Suazo Nunez a "fast track" plea agreement.  If he pleads guilty, Mr. Suazo Nunez would face a guidelines sentencing range of six to twelve months incarceration, though the Court has discretion to sentence him to less than that, and even to time served in the MCC already for this offense.  Thus, the potential sentence he faces poses some incentive to flee.  But, conditions of release including home incarceration enforced by electronic monitoring, his adult daughter serving as a court-appointed custodian, a surety bond of $25,000 co-signed by two financially responsible persons, and monitoring by Pre-Trial Services will mitigate the risk of flight.  Additionally, compliance with terms of release which would inure to Mr. Suazo Nunez's benefit at time of sentencing, if convicted, offer strong incentive not to flee and further mitigate the risk of flight.  The Court also notes that there is no evidence that Mr. Suazo Nunez attempted to evade arrest between January 29, 2020, when he voluntarily provided information to law enforcement about his identity, and March 3, 2020, when he was arrested—though he surely must have feared that he would be arrested based on having been previously removed from this country.

Next, the weight of the evidence against Mr. Suazo Nunez is strong. Though this factor weighs in favor of detention, there is a presumption of innocence. *See* 18 U.S.C.§ 3142(j).

Mr. Suazo Nunez's history and characteristics weigh in favor of release on conditions. These include: that he has strong family ties to this District, namely, his wife and five children and granddaughter; that he has had a stable residence—his apartment that his family has occupied for approximately fifteen years; and that he has had employment. The Court also notes that Mr. Nunez has serious mobility issues due to his work accident and surgeries, which would impair his ability and his motivation to flee, especially given release conditions that would allow him to be present with his family and receive care needed for his health conditions. The Court also notes that he has financially responsible suretors—his wife, who is a home health aide, and his daughter, who is a medical technician. The current COVID-19 pandemic provides a disincentive to flee, because someone with Mr. Suazo Nunez's asthma and pneumonia is unlikely to risk exposure to the virus that would necessarily be attendant to leaving the house and taking any form of public transportation.

Lastly, as noted above, the instant offense does not indicate that Mr. Suazo Nunez is a danger to community. Though his past offense involved a violent assault, his life since serving time for that offense has been spent working and living with his family and attending to his medical needs. There is no basis for finding that he will repeat his past mistakes.

The current COVID-19 pandemic raises the specter of other potential dangers to the community. These include whether Mr. Suazo Nunez, after being released from MCC, may pose a risk of spreading the coronavirus to his family or others. This risk can be mitigated by conditions of release as well, which the Court will impose. These conditions include that he will be required

to self-quarantine for fourteen days after he is released from the MCC and then be subject to home incarceration—mandated social distancing from the community.

The Court next addresses whether there are compelling reasons for Mr. Suazo Nunez's temporary release from detention now. As of the date of this writing, COVID-19 has infected nearly 700,000 people within the United States and resulted in over 35,000 deaths. *See* CDC.GOV (last visited Apr. 18, 2020). New York City, where the MCC is located, is the epicenter of the epicenter (New York State) of the pandemic in this country. *Id.* The dangers of contracting COVID-19 are exacerbated in a prison setting such as the MCC. *See Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*, LAW.YALE.EDU, https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (last updated Mar. 2, 2020 11:21 a.m.). The MCC houses approximately 700 people, the majority of whom are housed in two-man cells with a shared toilet and sink. Mr. Suazo Nunez's counsel reports terrible conditions, including lack of cleaning supplies, unsanitary conditions, and less than adequate medical care. As of April 17, 2020, there were approximately seven inmates who had tested positive for COVID-19 within MCC. However, the facility has not been able to conduct widespread testing, which undoubtably impacts its ability to identify inmates with the virus and control the spread. *See No COVID-19 Tests Available for Prisoners at Center of New York Outbreak, Court Documents Show*, ABC NEWS (Apr. 4, 2020), https://abcnews.go.com/Health/covid-19-tests-prisoners-center-york-outbreak-court/story?id=69969077. The Court notes that the BOP is doing all that it can to control the spread of the virus and has implemented a detailed plan to protect inmates.

Nevertheless, Mr. Suazo Nunez's unique circumstances place him at higher risk and constitute compelling circumstances warranting his temporary release. Specifically, Mr. Suazo Nunez has asthma and has contracted pneumonia since being detained. Pneumonia itself can be life-threatening. *See Pneumonia*, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/pneumonia (last visited Apr. 18, 2020). If he contracts COVID-19, on top of the pneumonia he already has, he risks hospitalization, being put on a ventilator and death, particularly given his underlying asthma. Though Mr. Suazo Nunez's other serious medical conditions do not pose a heightened risk of suffering serious COVID-19 complications, there is evidence that his condition is deteriorating in prison and his care is no doubt far less than he was receiving outside of the facility and than it will be in his daughter's home. And, while the Court appreciates that the BOP and MCC staff are currently trying their best to maintain safety and health of prisoners at this time, the Court is not blind to the many concerning reports about conditions at the MCC. Prison is a hard environment for anyone, but especially for those with serious medical issues like Mr. Suazo Nunez. Other courts in the District have released defendants who were charged with far more dangerous offenses than Mr. Suazo Nunez who were at high risk of contracting COVID-19 within the MCC. *See, e.g.*, *United States v. McDuffie*, 19 CR 212 (VEC) (releasing, over government objection, defendant with rheumatoid arthritis, hypertension, and cardiac issues, pending sentencing on drug conspiracy case); *United States v. Carrillo-Villa*, 20 MJ 3073 (CM) (releasing, over government objection, undocumented defendant in drug conspiracy case because of inability to meaningfully communicate with lawyer and risk of COVID-19); *United States v. Mickey*, 20 CR 135 (CM) (denying governmental appeal and affirming release of defendant with severe asthma in aggravated assault with a deadly weapon in aid of racketeering case); *United States v. Brown*, 15

9

CR 623 (CM) (releasing, over government objection, defendant with asthma on child sexual abuse VOSR); *United States v. Antonio Reyes*, 20 CR 127 (GHW) (releasing, on consent, fifty-two year old defendant with asthma in drug conspiracy case).  And, in response to a question by this Court at the April 17, 2020 hearing, the government was unaware of any case where a medically high-risk defendant charged only with illegal reentry had been detained after an application for temporary release due to COVID-19 concerns.

      This Court's independent research found only one factually similar case to this one from the  District of Minnesota, *United States v. Ramirez-Rodriguez*, 20 CR 00028, 2020 WL 1847576 (D.Minn. Apr. 13, 2020).  In that case, the defendant was arrested for illegal reentry and, like the defendant here, applied for release from detention based on his age and diabetes and fear of contracting COVID-19 while detained.  Even though there were no known cases of the virus in the detention facility where he was housed, the court granted him release on conditions.  The court noted the contagious nature of COVID-19 and its rapid spread throughout the country, as well as the increased risk of contagion in jails.  The court also found that the coronavirus would make it more difficult for the defendant to flee, as most means of domestic travel are hampered by lock-downs and cancellations, and because the defendant's vulnerability to the virus incentivized him to avoid travel.  *Id.*  These same things are true for Mr. Suazo Nunez.  The court in the *Ramirez-Rodriguez* case also noted that the availability of a safe and verifiable place to live with a third-party custodian mitigated the risk of non-appearance.  *Id.* As noted above, the same is true here—Mr. Suazo Nunez's adult daughter will act as his custodian.  She has been a medical technician for five years, but, unfortunately due to COVID-19, was just laid off.  She will be home 24-7 to supervise her father and assured the Court that she would report any violations of the terms of his release and ensure compliance with the Court's self-quarantine order and otherwise

follow safe practices to avoid COVID-19 in her home in accordance with public health authorities' published guidance. Insofar as she is in the medical field, she is also well-versed in how to comply with medical best-practices for mitigating the risk of disease.

The Court further finds that Mr. Suazo Nunez's proposed plan of release is tailored to mitigate the spread of COVID-19. Mr. Suazo Nunez will reside at his adult daughter's four-bedroom house in Newburgh, New York. His daughter and granddaughter are the only current occupants, and there is a separate room and bathroom where Mr. Suazo Nunez can self-quarantine for fourteen days. To further mitigate risk to others by defendant's release, the Federal Defenders' Office will arrange for a cab to take Mr. Suazo Nunez directly from the MCC to his daughter's home where he will immediately go into self-quarantine. Thus, he will not go on public transportation or take other routes likely to infect the public in the event he has possibly already unknowingly contracted COVID-19 in the MCC. *See id*. (finding that release plan was well-tailored to mitigate risk of spread of COVID-19 to the defendant and the community).

The Court briefly addresses the impact of the ICE detainer. While it is possible that ICE may elect to detain Mr. Suazo Nunez upon his release from the MCC, this fact does not weigh against his release under the Bail Reform Act. Moreover, it is far from clear that ICE will elect to detain Mr. Suazo Nunez. As noted above, ICE has modified its procedures during the current pandemic and may elect not to detain Mr. Suazo Nunez, in light of the strict conditions of release this Court has imposed that mitigate the risk of flight. Accordingly, the presence of an ICE detainer does not control this Court's decision to release Mr. Suazo Nunez. *Id.*

Finally, the Court notes that Mr. Suazo Nunez has been offered a plea agreement. His counsel stated that her access to her client has been so impaired by the current lockdown at MCC and lack of video and phone equipment for private consultation that she hasn't even been able to

discuss it with him. In this case, there is a current need for Mr. Suazo Nunez to have access to counsel now to discuss this offer. This too militates in favor of temporary release.

## CONCLUSION

For the reasons set forth above, and as discussed on the record, I find that Defendant's adult daughter is an "appropriate person" to take temporary custody, and she has represented to the Court that she will ensure compliance with the terms of her father's release. I also find that temporary release is necessary for preparation of the Defendant's defense and discussion of the proffered plea agreement and for the compelling reason that Defendant is at a high risk of complications from COVID given his asthma and pneumonia. Accordingly, Defendant's application for temporary release is granted. The parties are referred to ECF 9 for the conditions of release.

SO ORDERED.

_____
Katharine H. Parker
United States Magistrate Judge

Dated: April 20, 2020
New York, New York